UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA MILLEN,

    Plaintiff,                                  Case No. 2:16-cv-12230

v.                                          HONORABLE STEPHEN J. MURPHY, III

OXFORD BANK,

    Defendant.
                                       /

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]**

    Plaintiff Debra Millen brings suit against her former employer, Oxford Bank ("Bank"), for her alleged wrongful termination. She alleges violation of the Family Medical Leave Act ("FMLA"), age discrimination and age harassment in violation of the Age Discrimination in Employment Act ("ADEA") and the Elliot Larsen Civil Rights Act ("ELCRA"), and sex discrimination and sex harassment in violation of the Civil Rights Act, Title VII, and the ELCRA. The Bank filed a motion for summary judgment. The Court reviewed the briefs and determined that a hearing was unnecessary. ECF 25. For the reasons stated below, the Court will now grant in part and deny in part the Bank's motion.

**BACKGROUND**

    The Bank employed Millen in a number of positions from 1990 until 2015. During her tenure with the Bank, Millen was transferred between several different branches and received several promotions. In 2013, Millen became the Branch Manager of the Bank's Goodrich branch. In early 2015, the Bank's CEO David Lamb issued a strategic plan that included the goal of becoming more productive by "[c]los[ing] uneconomical offices—with

Goodrich the only clear choice at this early stage[.]" ECF 20-1, PgID 191. In July 2015, Millen went on leave under the FMLA.

While Millen was still on leave, Lamb sent an email to Nancy Rosentrater, the Bank's Director of Retail Banking, directing her "[a]s a part of the Strategic Plan . . . to eliminate the position of branch manager for the Goodrich branch as soon as practicable." *Id.* at 193. On October 8, 2015, Millen received a "separation agreement" from Rosentrater dated September 30, 2015. The agreement notified Millen of the termination of the Goodrich Branch Manager position. Heidi Huack, Goodrich's head teller, and Rosentrater managed the Goodrich branch in the absence of a branch manager. When the Goodrich Branch Manager position was eliminated, the Addison Branch Manager position was available. Several months later in March 2016, the Bank hired Jason Howell to operate its Lake Orion branch. The Goodrich branch's closure was effective on February 1, 2017. ECF 20-1, PgID 124. The two remaining Goodrich branch employees were transferred to the Bank's other branches.

On June 16, 2016, Millen filed the present action. On March 29, 2017 after the close of discovery, the Bank filed a motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

2

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## DISCUSSION

Millen's amended complaint alleges the following: violation of the FMLA, 29 U.S.C. § 2601; age discrimination and harassment in violation of the ADEA, 29 U.S.C. § 621, and ELCRA, Mich. Comp. Laws § 37.2101; and sex discrimination and harassment in violation of the 1991 Civil Rights Act, Pub. L. No. 102-166, 105 Stat 1071, Title VII, and the ELCRA.

The federal claims are analyzed primarily under a burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g., Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012) (recognizing application of *McDonnell Douglas* to FMLA retaliation and interference claims). First, the plaintiff must make a prima facie showing. Once it is established, the defendant must offer a legitimate, non-discriminatory reason for the adverse employment action. If a reason is shown, the plaintiff then carries the burden of showing by a preponderance of the evidence that the defendant's proffered reason is merely a pretext. At each stage, the Court must consider whether there is sufficient evidence to create a genuine dispute of material fact. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

I. <u>Family Medical Leave Act Claims</u>

The Sixth Circuit recognizes two theories for recovery under the FMLA. *Hoge v. Honda of Amer. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). The first theory, the "entitlement" or "interference" theory, involves an employer's unlawful interference with any right provided by the FMLA. 29 U.S.C. § 2615(a)(1). The second theory, the "retaliation" or "discrimination" theory, involves an employer's discrimination against an individual for opposing an employer's violation of the FMLA. *Id.* at § 2615(a)(2). Plaintiff's claims fail under both theories.

> A. Millen fails to make a prima facie showing of FMLA interference because the Bank did not deny her FMLA benefits to which she was entitled.

The prima facie case for FMLA interference requires proof of five elements. *Donald*, 667 F.3d at 761. The parties dispute only the fifth element—whether the employer denied the employee FMLA benefits to which she was entitled. An employee returning from FMLA leave is entitled to be restored to "any right, benefit, or position of employment" that she would have had a right to had she not taken leave. 28 U.S.C. § 2614. An employee returning from FMLA leave is not entitled to restoration, however, "unless [s]he would have continued to be employed if [s]he had not taken FMLA leave." *Hoge*, 384 F.3d at 245; *see also Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) ("If the employee cannot show that he was discharged because he took leave—or at least that his taking of leave was a 'negative factor' in the employer's decision to discharge him—he cannot show a violation of the FMLA.").

Here, Millen failed to meet even the minimal burden of presenting a prima facie case. The record does not contain any evidence that Millen would have been entitled to her position as Goodrich Branch Manager but-for her taking FMLA leave. The undisputed facts

4

show that Millen's position would have been terminated without regard to her FMLA leave. In the Bank's strategic plan, the Goodrich branch was identified as least profitable. When an employer reduces its workforce for economic reasons, "it incurs no duty to transfer an employee to another position with the company." *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986). Millen's FMLA interference claim fails.

B. Millen fails to rebut the Bank's legitimate reason for terminating her employment position.

The prima facie case for FMLA retaliation claims requires proof of four elements. *Donald*, 667 F.3d at 761. The parties dispute only the fourth element—whether there was a causal connection between the protected FMLA activity and the adverse employment action. The Sixth Circuit has acknowledged that the temporal proximity between a request for leave and an employee's termination may give rise to a presumption of a causal connection. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283–84 (6th Cir. 2012). Normally, the analysis is applied to employees who are fired shortly after giving notice of taking FMLA leave or shortly after returning from FMLA leave. Regardless, the Sixth Circuit has found that "nearness in time" may sufficiently satisfy the "low threshold of proof to establish a prima facie case of retaliatory discharge." *Id.* at 283. Here, Millen took FMLA leave in July 2015 and received notice of her termination in October 2015, one week before returning from leave. The nearness in time of the adverse employment action is sufficient to establish a *prima facie* case of retaliatory discharge.

The Bank responds by pointing to the strategic plan as evidence of a legitimate, non-discriminatory reason for the action. The plan, which was drafted before Millen gave notice of her FMLA leave, noted the Bank's desire to eliminate the entire Goodrich Branch because it was the least successful branch. The Bank subsequently closed the branch.

5

Millen has not offered any evidence to suggest that the Bank's proffered reason is merely pretext. In fact, Millen asserts only that "Plaintiff establishe[d] a prima facie case for a violation of her rights under the FMLA." ECF 22, PgID 226. That showing is insufficient for Millen to carry the day under *McDonnell Douglas*. Millen's FMLA retaliation claim fails.

II.     Age Discrimination Claims

Age-discrimination prevention statutes bar employers from discharging or discriminating against employees on the basis of age. 29 U.S.C. § 623; Mich. Comp. Laws. § 37.2202. Discrimination may be shown by either direct or indirect evidence. Direct evidence is that evidence that, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275–76 (6th Cir. 2003). *McDonnell Douglas* does not apply to ADEA claims relying upon direct evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). No direct evidence is presented in the case.[1] Millen relies upon circumstantial evidence to support her age discrimination claims. Therefore, the Court will analyze both federal and state law claims under *McDonnell Douglas*'s burden-shifting approach.[2]

Millen offers three events as evidence of discrimination: her transfers between the Bank's branches during her employment, the termination of the Goodrich Bank Manager

---

[1] The Court considers four factors to determine whether direct evidence exists. *Peters v. Lincoln Elect. Co.*, 285 F.3d 456, 478 (6th Cir. 2002). No evidence supports the factors here.

[2] The Michigan Supreme Court has held that the *McDonnell Douglas* standards may be applied to an age-discrimination suit brought under state law. *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683–85 (1986).

6

position, and the Bank's failure to provide her an opportunity to transfer to a position at another branch.

A. Millen fails to show that her transfers between branches qualify as adverse employment decisions.

The prima facie case of age discrimination requires proof of four elements. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). The second element requires the plaintiff to show that she suffered an adverse employment decision. An adverse employment action affects a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (emphasis omitted). Without changes in salary, benefits, title, or work hours, transfers usually do not constitute adverse employment actions. *Id.* at 885–86. A transfer constituting a constructive discharge, however, may be a sufficient adverse employment action. For a transfer to amount to a constructive discharge, its conditions must be objectively intolerable to a reasonable person. *Kocsis*, 97 F.3d at 886 (discussing *Darnell v. Campbell Cty. Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), *aff'd*, 924 F.2d 1057 (6th Cir. 1991). An employee's subjective impressions as to the desirability of one position over another are not relevant. *Id.* (citing *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir. 1985)). An increased commute is a factor in determining whether a constructive discharge has occurred. *Id.*

Millen's transfers were not accompanied by changes in salary, benefits, title, or work hours. In fact, Millen testified that from 1990 to 2000, she worked in four different branches "[b]ecause of promotions." ECF 20-1, PgID 156. Even in 2013, when Millen was transferred to the Goodrich branch against her wishes, *id.* at 166, the transfer was accompanied by a pay increase, *id.* at 188. Millen may have preferred to avoid transfers, but that preference

7

does not convert the transfer into an adverse employment decision. Moreover, Millen does not present facts demonstrating that the transfers created circumstances that would have been objectively intolerable to a reasonable person. Her transfer from the Lake Orion Branch to the Goodrich Branch increased her commute by 25 miles. The Sixth Circuit has upheld reassignments that required trips to cities nearly 80 and 100 miles from an employee's home and required travel multiple times a month. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535 (6th Cir. 2002). The transfer falls within the parameters of those the Sixth Circuit has found to be objectively tolerable. Her age discrimination claims based on her transfers fail.

- B. Millen fails to establish the prima facie case of age discrimination as it relates to the Goodrich Branch Manager positon.

The prima facie case of age discrimination requires proof of four elements. *Rowan*, 360 F.3d at 547 (6th Cir. 2004). The fourth element requires the plaintiff to show that she was replaced by a person outside the protected class. Work force reductions eliminate one or more positions at a company. An employee's position is not eliminated as part of a work force reduction when she is replaced after her termination. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). An employee is not replaced, however, "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.* A person is replaced "*only* when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* (citation omitted) (emphasis added).

Here, Millen's position as Goodrich Branch Manager was eliminated. Therefore, no person replaced Millen as Goodrich Branch Manager. Moreover, it is undisputed that, upon the termination of the Goodrich Branch Manager position, Hauck and Rosentrater assumed

8

the branch manager's responsibilities. Both were already employees at the Bank and performed the branch manager duties in addition to their own. The Bank's redistribution of work duties does not qualify as "replacement" of Millen for purposes of the prima facie case of age discrimination.

      C. The Bank failed to show a legitimate, non-discriminatory reason for not considering Millen for the Addison Branch Manager position.

In workforce reduction cases when an employer eliminates a position, the employer may be liable for age discrimination if the employer fails to transfer the employee from the eliminated position to other available positions. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349–50 (6th Cir. 1998). The employer violates the ADEA when it transfers other employees, but fails to transfer some employees because of their age. *Id.* at 351. The *McDonnell Douglas* framework guides the Court's analysis. The prima facie case in age-discrimination-for-failure-to-transfer cases has four elements. The plaintiff must show: (1) membership in a protected class, (2) plaintiff was qualified for positions available at the time of the elimination of her position, (3) the employer did not offer the position to plaintiff, and (4) a similarly situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position. *Id.* Even if the comparable employee is in the same protected class, an age difference of "ten or more years" is usually "sufficiently substantial to meet the requirement of the fourth part of [the] age discrimination prima facie case." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–39 (listing cases finding a six-year age difference insufficient for a presumption, but a ten-year age difference sufficient for a prima facie showing).

Here, Millen asserts that she was not provided an opportunity to transfer to an available position for which she was qualified. At the time the Bank eliminated Millen's

9

position, the Branch Manager position was available. ECF 20-1, PgID 127. Jennifer Sherby, a 42-year-old Bank employee, was given the job. Millen was not considered. *Id.* Sherby, because she was over 40, was a member of the same protected class as Millen. But Sherby was significantly younger than the 58-year-old Millen. Millen thus made a prima facie showing. The Bank fails to offer a legitimate, non-discriminatory reason for its failure to consider Millen for the Addison Branch Manager position.

III. Sex Discrimination Claims

Sex-discrimination prevention statutes bar employers from discharging or discriminating against employees on the basis of sex. Millen's sex discrimination claim as to the transfers fails for the reason stated above: the transfers did not constitute adverse employment actions. Millen's sex discrimination claim as to being replaced at the Bank's Goodrich branch also fails for the reason stated above: Millen was not replaced and, even if she were, the responsibilities were assumed by women.[3] Finally, Millen's sex-discrimination claim as to the failure to be considered for transfer to the Addison branch fails because the Bank hired another woman, Jennifer Sherby, to fill the role.

IV. Age and Sex Harassment Claims

A plaintiff may recover for age or sex harassment under both federal and Michigan law.[4] There are two prongs to a harassment claim under Title VII. First, the complained-of

---

[3] Plaintiff advances an argument that "it is undisputed that Mrs. Millen was replaced by a younger person (Heidi Huack)". ECF 22, PgID 228. Later, Millen asserts that "Defendant hired a younger male employee (Jason Howell) to serve as a Branch Manager" as the basis of her sex discrimination claim. ECF 22. PgID 234. Based on the record, Howell was hired to fill a position that was not available at the time that Millen's position was eliminated. Huack, a female, is the only plausible replacement.

[4] The Title VII standards inform the analysis for age discrimination under the ADEA. *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996).

conduct must be severe or pervasive enough to create "an objectively hostile or abusive work environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). Second, the victim must "subjectively perceive the environment to be abusive" and that conduct must alter the conditions of the victim's employment. *Id.* at 21–22. Michigan law employs a similar standard requiring that the work environment be so tainted by harassing conduct that, "in the totality of the circumstance, a reasonable person in the plaintiff's position would have perceived" that the conduct substantially interfered with the employment or had the "purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Radtke v. Everett*, 442 Mich. 372 (1993).

Plaintiff carries the burden of proof. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). All the circumstances of employment are relevant in establishing the existence of a hostile or abusive work environment. A plaintiff may point to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance" or if the conduct inflicted psychological harm. *Harris*, 510 U.S. at 23. Plaintiff avers only that the continual transfers clearly constituted harassment "and had the purpose of attempting to compel Mrs. Millen to quit her job." ECF 22, PgID 235. Millen does not point to any facts to support her conclusory allegations nor could she because the record is devoid of any facts establishing severe or pervasive abusive conduct.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment [20] is **DENIED IN PART** as it relates to Plaintiff's age discrimination claim for

failure to be considered for a transfer to a position for which she was qualified that was available at the time of the elimination of her position.

**IT IS FURTHER ORDERED** that, in all other respects, Defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 25, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager